Brady, Patrick F., J.
On June 26, 2010, Kevin M. Fitzgerald was struck by a motor vehicle driven by Alexsandro Ferreira and owned by Marcio Alves DeO-liveira while on a bicycle on Washington Street in Norwood, Massachusetts. The vehicle was insured by Commerce Insurance Company (Commerce). Fitzgerald sustained serious injuries in the collision. The driver, Ferreira, was unlicensed.
Mr. Fitzgerald, through his attorney, submitted a claim to Commerce on or about July 3, 2010. Commerce promptly commenced an investigation. For reasons hereinafter set forth, Commerce declined coverage for the optional limits ($100,000) purchased by the vehicle owner, but offered the compulsory coverage required under part one of the policy ($20,000). Fitzgerald declined the offer. In January 3, 2012 he commenced an action against Commerce under G.L.c. 93A for unfair and deceptive claims practices for, essentially, failing to effectuate a fair and reasonable settlement after liability had become reasonably clear.
On February 27,2012 Commerce filed a declaratory judgment action in the Worcester Superior Court seeking a declaration that it was not required to defend and indemnify Mr. DeOliveira or Mr. Ferreira beyond the limits of compulsory coverage. DeOliveira and Ferreira were served “last and usual,” did not answer, and were defaulted. Fitzgerald was included as a party to the declaratory judgment action and he answered and defended. The declaratory judgment action was transferred to Norfolk County and consolidated with Fitzgerald’s c.93A action for trial.
I heard the case, jury waived, from July 30 to August 1, 2013. On the credible evidence before me, I now find and rule as follows.
1. On receipt and review of the file Commerce assigned the investigation to its Special Investigations Unit (S.I.U.). An S.I.U. Investigator, Joshua Bender, was assigned to interview and take statements from DeOliveira and Ferreira. The police report reflected that the driver, Ferreira, was unlicensed. In addition, Commerce noted that DeOliveira had insured 3 vehicles on the policy without listing any additional drivers. This at least raised an issue of whether proper parties were using the insured vehicles because “regular users” must be listed by the insured and additional premiums paid. Finally, the insured had presented a Brazilian license which Commerce determined should be investigated further.
2. The investigator, Mr. Bender, made several efforts to locate and interview DeOliveira and Ferreira without success. (See Exhibit 15.) On July 2, 2010 Bender called DeOliveira at the number listed in the file and was unable to leave a voice message. On July 7 he canvassed 688 Washington Street, Walpole, the address given by the insured, and was unable to observe any of the 3 insured vehicles on or near the premises. On the same day he canvassed 252 Washington Street, Norwood, where Ferreira lived, and observed the insured vehicle allegedly involved in the accident, a Chevrolet Geo Prism, parked on the premises. The Geo *373 Prism then had no plates, but Bender was able to confirm that it was the insured vehicle by the VIN. On July 12, 2010 Mr. Bender was able to reach an unidentified male who said that DeOliveira had given him the phone. This individual said that he would tell the insured to call Bender. On July 13, 2010, Bender received a call from a man identifying himself as Alexsandro Ferreira who indicated that the listed number of the insured was his. He then provided Bender with the insured’s listed phone number. Bender attempted to arrange a recorded statement with Ferreira, but he declined the request as he was “too busy.” From July 15 to July21 Bender knocked on the insured’s door several times and received no answer. Bender never observed any of the insured vehicles parked on the premises in Walpole. OnJuly27,2010 Bender was able to speak with a person identifying himself as the insured who refused to meet with him for a statement. This person, who spoke and understood English, told Bender to call his attorney, Paul Mora. Bender left messages with attorney Mora on 2 occasions.
On August 9, 2010 Bender was able to speak with attorney Mora, who said that he had not received any payments from DeOliveira or Ferreira so that he had not taken them on as clients. In any event, Mora gave Bender his permission to set up statements with them. Also on August 9,2010, Commerce wrote to DeOliveira and Ferreira warning them of the consequences under the policy of a failure to cooperate.
In August 19, 2010 Bender noted in the file that he had not heard from Ferreira, DeOliveira or attorney Mora and submitted his final report.
3.As indicated, the insured submitted a Brazilian driver’s license when he applied for insurance through the Kunevich & Lau insurance agency on August 10, 2009. The policy was assigned to Commerce through the Massachusetts assigned risk pool. Of interest to this case, the Brazilian license contained a so-called CPF number of. 011.481.191-91. In Brazil this number is equivalent to a person’s Social Security number in the United States. The license also carried an expiration date of January 2013. The agency sent a copy of the license (the original having been retained by the insured) for initial validation to Commerce. In accordance with its usual practice a Commerce employee, René Kinney-Petrelli, checked the license against exemplar licenses in an international book of drivers licenses and noted no apparent irregularily. Ms. Kinney-PetreUi also check the Massachusetts Registry of motor vehicles to determine whether the insured may have been in violation of the requirement that a person may drive on a foreign license in Massachusetts, but only for one year from time of arrival. Likewise the search of the Registry of Motor Vehicles database revealed no issues. Commerce did not utilize any Brazilian investigator or access any Brazilian websites to further investigate the validity of the license. The policy issued by Commerce was effective as of August 10, 2009, and carried $100,000/$300,000 optional limits.
4. Following the accident Commerce referred the case to private investigator Charles McLaughlin, who had experience and expertise investigating foreign drivers’ licenses. Forged or falsified foreign drivers’ licenses are a relatively common problem. McLaughin himself had investigated over 500 Brazilian driver’s licenses, and was familiar with the system in that country. Using a website for Brazilian motor vehicle licenses, called by its acronym DETRAN, McLaughlin was able to confirm that a person with the same name as provided by the insured, Marcio Alves DeOliveira, did have a record of being licensed in Brazil. Inputting the registration number on the copy of the license provided to him by Commerce turned up driver information concerning the Brazilian Mr. DeOliveira.
McLaughlin noted 2 irregularities in the license provided to him. The CPF on DeOliveira reflected in the DETRAN database was 811.481.191-91. The CPF on the copy of the insured’s license was 011.481.191-91. McL-aughin then went to the website for the Brazilian Ministry of Finance and ran both of the CPF numbers. The number on the license, 011 .481.191-91, did not associate with any name. The CPF number 811.481.191-91 came back to Marcio Alves DeOliveira. I conclude from McLaughlin’s findings that the person calling himself Marcio Alves DeOliveira when he applied for insurance with the agency on August 10, 2009 presented a license which contained a false CPF number.
The second irregularity in the driver’s license presented to the agency and to Commerce which Mr. McLaughlin detected was in the expiration date on the license. The license provided to McLaughlin carried a January 2013 expiration date. A 2013 expiration date would not have been possible in the Brazilian system. The DETRAN records reflected that Mr. DeOliveira first was issued a license on December 21, 1999 with an expiration date of January 12, 2005. In Brazil, drivers licenses are issued for a one-year probationary period, and then are up for renewal every 5 years. With a five-year cycle, the driver here could not have had an expiration date in 2013.[1] I credit Mr. McLaughlin’s testimony and conclude that the license presented by Mr. DeOliveira to the agency and Commerce was also altered with respect to the expiration date.
5. By letter of August 19, 2010 (Exhibit 19) Commerce advised the attorney representing Mr. Fitzgerald that its investigation determined that the CPF number and expiration date of the license presented by the insured had been “ doctor ed/altered.” Accordingly Commerce denied the optional coverage carried on the policy ($100,000), and indicated that the only coverage available to Mr. Fitzgerald as the victim of the accident was the compulsory coverage of $20,000.
6. On August 30, 2010 Commerce wrote to its insured, Mr. DeOliveira, advising him of its findings regarding the Brazilian license and that, as a result of his providing false information in the policy application, and for his failure to cooperate, it would not provide the *374 optional limits purchased but only the compulsory limits. The insured did not respond to this letter.
7. By letter of August 27, 2010 to Mr. Fitzgerald’s attorney, Commerce offered the $20,000 compulsory coverage limits upon the condition of obtaining a release. (Exhibit 21.)
8. The attorney for Mr. Fitzgerald sent to Commerce a chapter 93A letter on December 13, 2010 (Exhibit 27). Commerce responded by letter of December 30, 2010 denying chapter 93A culpability. (Exhibit 28.)
DISCUSSION
Section 18 of the standard Massachusetts automobile insurance policy (Exhibit 18) provides in paragraph 18 as follows:
18. False Information. If you or someone on your behalf gives us false, deceptive, misleading or incomplete information in any application or policy change request and if such false, deceptive, misleading or incomplete information increases our risk of loss, we may refuse to pay claims under any or all of the Optional Insurance Parts of this policy. Such information includes the description and the place of garaging of the vehicles to be insured, the names of all household members and customary operators required to be listed and the answers given for all listed operators. We may also limit our payments to those amounts that we were required to sell under Part 3 and Part 4 of this policy.
I find and rule that providing an altered and doctored driver’s license to the agency and Commerce in order to obtain automobile insurance is a violation of the policy which increases the insurer’s risk of loss and justifies the denial of coverage of the optional limits. In this case the person claiming to be Marcio Alves DeOliveira did present an altered or doctored license with the intent of deceiving the agent and the insurer for the purpose of obtaining an insurance policy.
Furthermore, the policy requires that the insured or anyone else covered under the policy cooperate with the insurer in the “investigation, settlement, and defense” of any claim or lawsuit. Mr. DeOliveira and Mr. Ferreira both declined to cooperate, and refused to provide any information to Commerce’s investigator, Mr. Bender.
Accordingly, Commerce is entitled to a declaratory judgment that it properly denied part 5 optional coverage because the insured provided false information by submitting a false Brazilian license, and that Commerce is not required to defend and/or indemnify Mr. DeOliveira or Mr. Ferreira beyond the limits of the $20,000 compulsory coverage.
As to the chapter 93A claim, I find and rule that Commerce promptly investigated the claim and properly denied the demand for the policy limit of $100,000. Commerce adequately informed all interested parties, including Mr. Fitzgerald, of the denial and the reasons therefore. Accordingly, I will find for Commerce on the chapter 93A claim.
ORDER
A judgment shall enter that Marcio Alves DeOliveira provided materially false information to Commerce in procuring an insurance policy with Commerce and violated the policy by providing false information by offering an altered Brazilian driver’s license; and that Commerce properly denied part 5 optional coverage available under the policy because of Marcio Alves DeOliveira’s misrepresentation to Commerce in his insurance application in violation of the policy and in violation of G.L.c. 175, §186. Commerce is not required to defend and/or indemnify Marcio Alves DeO-liveira or Alexsandro Ferreira beyond the limits of part one compulsory coverage up to $20,000 as available under the policy. Furthermore, Commerce is under no obligation to tender payment to Kevin M. Fitzgerald beyond the limits of available part one compulsory coverage up to $20,000 of the policy.
As to the chapter 93A claim asserted in case 12-00011 by Kevin Fitzgerald, judgment shall enter for the defendant Commerce.

Mr. McLaughlin may have made a mistake in his initial report to Commerce (Exhibit 11) in stating that the DeOliveira license in the DETRAN database was “currently expired.” Later investigation by him in 2013 prior to trial revealed that the license had been renewed. This, however, does not affect the conclusion that the expiration date of 2013 reflected in the license presented by the insured to the agency and Commerce was an alteration.